# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TYLECIA M. O/B/O C.O. (a minor),

                Claimant,

        v.

MARTIN O'MALLEY, Acting
Commissioner of Social Security,

                Respondent.

No. 21 CV 2392

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Tylecia M. on behalf of C.O., a minor[1] ("Claimant") seeks review of the final decision of Respondent Martin O'Malley,[2] Acting Commissioner of Social Security ("Commissioner"), denying his application for supplemental security income under section 1614(a)(3)(C) of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9]. This Court, therefore, has jurisdiction pursuant to 42 U.S.C. § 405(g). Claimant filed a Opening Brief seeking remand [ECF No. 19] ("Claimant's Motion"), which the Court construes as a motion, and the Commissioner filed a Response to

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Martin O'Malley became the Acting Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner O'Malley as the named defendant.

Plaintiff's Motion for Summary Judgment, which the Court construes as a motion for summary judgment [ECF No. 24] ("Response"). This matter is fully briefed and ripe for decision. *See* [ECF Nos. 19, 24, 25].

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Motion seeking remand [ECF No. 19] is granted, and the Commissioner's Response seeking summary judgment [ECF No. 24] is denied.

## STANDARD OF REVIEW

Children are considered disabled under the Social Security Act if they have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations establish a three-step process to evaluate whether a child is disabled: (1) the child cannot be engaged in any "substantial gainful activity" (20 C.F.R. § 416.924(b)); (2) the child must have a medically determinable impairment or combination of impairments that qualifies as "severe" (20 C.F.R. § 416.924(c)); and (3) those impairment(s) must meet, medically equal, or functionally equal the severity one of the "listings" in the Social Security regulations (20 C.F.R. § 416.924(d)). *See McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021) (observing that because the disability analysis for children is not work-focused, officials instead ask "whether the child's limitations meet one of the many listed categories of disability or are functionally equivalent to one of them").

If an impairment does not meet or medically equal a listing, the administrative law judge ("ALJ") considers six "domains" of functioning to evaluate whether an

impairment functionally equals a listing. 20 C.F.R. § 416.926a(b)(1). These domains are as follows: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* To functionally equal a listing, the impairment must produce a "marked" limitation in at least two domains of functioning or an "extreme" limitation in one domain. *Id.* at § 416.926a(d). "A 'marked' limitation interferes 'seriously' with a child's ability to initiate, sustain, or complete activities in the domain, and an 'extreme' limitation interferes 'very seriously.'" *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (citing 20 C.F.R. § 416.926a(e)2, 3)). The ALJ must consider the combined effect of all medically determinable impairments, even if a given impairment is not, on its own, severe. *Id.* at §§ 416.923, 416.924a(b)(4), 416.926a(a), and 416.926a(c). If a child meets the above requirements—in other words, does not engage in substantial gainful activity and has a severe impairment that meets, medically equals, or functionally equals a listing—the child will be found disabled. *Id.* at § 416.924.

On judicial review, the court will affirm an ALJ's decision "if the correct legal standards were applied and supported with substantial evidence." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (internal quotation marks omitted). The evidence supporting an ALJ's decision

"must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). In determining whether there is substantial evidence, the court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). But a court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment" for the ALJ's. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation and brackets omitted).

The ALJ must explain the decision "with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). In other words, an ALJ must "identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (internal citation omitted). The ALJ "may not select and discuss only that evidence that favors [her] ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995), but "must confront the evidence that does not support [her] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). While a reviewing court gives substantial deference to the ALJ's decision, it must operate as "more than merely [a] rubber stamp." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). If the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## PROCEDURAL HISTORY

On November 19, 2018, Claimant, as C.O.'s mother, filed an application for supplemental security income on behalf of C.O., alleging a disability onset date of

April 30, 2017. (R.61). The application was denied initially on May 23, 2019, and again on reconsideration on December 17, 2019, after which Claimant requested a hearing before an ALJ. (R.61). On December 5, 2019, Claimant appeared telephonically and testified on her son's behalf at a hearing before ALJ Jordan Garelick. (R.61). Claimant was represented by counsel at the hearing. (R.61).

On October 20, 2020, the ALJ issued a decision denying Claimant's application for supplemental security income. (R.61-69). The ALJ followed the three-step evaluation process required by the Social Security Regulations to determine if a child is disabled. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ determined that C.O. was a preschooler on November 19, 2018, the date the application was filed, and a school-age child at the time of the decision, and that he had not engaged in substantial gainful activity since his application was filed. (R.62). At step two, the ALJ concluded that C.O. has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); adjustment disorder with mixed disturbance of emotions and conduct; learning disorder; and asthma. (R.62). At step three, the ALJ concluded that C.O. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). (R.62-63). The ALJ further concluded that C.O. does not have an impairment or combination of impairments that functionally equals the severity of a listing. (R.63-69). Therefore, the ALJ found C.O. has not been under a disability, as defined in the

Social Security Act, since November 19, 2018, the date his application was filed. (R.69).

The Appeals Council declined to review the matter on March 5, 2021, making the ALJ's decision the final decision of the Commissioner. (R.1-6). Therefore, this Court now has jurisdiction to review this matter. 42 U.S.C. § 405(g); *Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).

## ANALYSIS

Claimant argues the ALJ erred in applying an incorrect standard when evaluating the domain of caring for yourself, that the ALJ's conclusion that C.O. had less than marked limitations in that domain is not supported by substantial evidence, and that the ALJ erred in failing to consider a closed period of disability for the time preceding C.O.'s change to new medication. Claimant's Motion [ECF No. 19] at 12-15. The Court agrees the ALJ's finding of less than marked limitations in the domain of caring for yourself is not supported by substantial evidence and that the ALJ erred in not considering a closed disability period. For these reasons, the Court remands.

### A. ALJ Applied the Correct Standard in Evaluating Evidence Relevant to the Domain of Caring for Yourself.

Claimant argues the SSR Ruling related to the domain of caring for himself encompasses "how well the minor is able to get his emotional (and physical) needs and wants met" and includes "how he deals with stress and changes in the environment." Claimant's Motion [ECF No. 19] at 12-13. Claimant says properly evaluating this domain requires analysis of "how well the minor is able to maintain

6

a health emotional state" and his "ability to self-regulate his emotional well-being."
[*Id.*] Claimant contends the ALJ "did not apply the appropriate standard" and "did
not recognize the scope of that domain." [*Id.*] at 13, 15.

The Court disagrees that the ALJ applied the incorrect standard. The ALJ's
analysis addressed evidence related to C.O.'s ability to regulate his emotions
including how he responds when he becomes angry and whether recent medication
helped C.O. better control his behavior. (R.68). Although the ALJ also discussed
evidence related to C.O.'s ability to wash and dress himself, (R.65, 67), which is also
relevant to this domain, *see* 20 C.F.R. § 416.926a(k)(ii), the ALJ did not improperly
consider only evidence related to C.O.'s ability to get his physical needs met in
analyzing this domain. (R.68). Accordingly, the ALJ did not apply an incorrect
standard or fail to recognize the scope of the domain of caring for himself.

### B. ALJ Failed to Draw a Logical Bridge Between Record Evidence and the Conclusion of a Less than Marked Limitation in the Domain of Caring for Yourself.

Claimant also argues the ALJ "failed to provide a logical and well-supported
bridge between the evidence and his conclusion" that C.O. had less than marked
limitations in the domain of caring for himself. Claimant's Motion [ECF No. 19] at
12-15.

When evaluating whether a child's impairments functionally equal a listing,
the regulations require the ALJ to "assess the interactive and cumulative effects of
all of the impairments for which we have evidence, including any impairments" which
are not severe. 20 C.F.R.§ 416.926a(a). The "whole child" approach promulgated in
the Commissioner's rulings emphasizes accounting for the interactive and

cumulative effects of all of the child's impairments. *See* SSR 09-1p, 2009 WL 396031, at *3; *Dent ex rel. K.V. v. Colvin*, 2013 WL 1500824, at *9-10 (C.D. Ill. Apr. 9, 2013). The Seventh Circuit has held that in assessing disability claims "the ALJ must consider 'all relevant evidence' and may not analyze only that information supporting the ALJ's final conclusion." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001), citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000); *see also* 20 C.F.R. § 416.924(a). Accordingly, "meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence." *Brider v. Apfel*, 18 F. Supp. 2d 900, 904-05 (N.D. Ill. 1998), citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

As discussed above, the domain of caring for yourself encompasses a claimant's ability to appropriately address both physical and emotional needs. Social Security regulations provide that in analyzing this domain, "we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; [and] how you cope with stress and changes in your environment" 20 C.F.R. § 416.926a(k). "Caring for yourself effectively, which includes regulating yourself, depends upon your ability to respond to changes in your emotions and the daily demands of your environment to help yourself and cooperate with others in taking care of your personal needs, health and safety." 20 C.F.R. § 416.926a(k)(i). "To meet [your physical and emotional needs] successfully, you must employ effective coping strategies, appropriate to your age, to identify and regulate your feelings, thoughts, urges, and intentions." 20 C.F.R. § 416.926a(k)(iii). "In other words, this domain comprises physical needs 'such as

feeding, dressing, toileting, and bathing' but also the ability to 'employ effective coping strategies, appropriate to your age, to identify and regulate your feelings.'" *Chiquita B. o/b/o D.B. v. Kijakazi*, 2023 WL 5152668, at *7 (N.D. Ill. Aug. 10, 2023).

The Commissioner acknowledges "[t]here is no dispute that [C.O.] has limitations in the domain of 'caring for yourself.'" Response [ECF No. 24] at 6. The ALJ found C.O.'s impairments caused some limitations in this domain, noting Claimant's testimony describing C.O.'s aggressive and destructive behavior when he gets angry, school records indicating "issues with his behavior," and evidence that "demonstrated issues with his behavior and anger issues." (R.68-69). The ALJ relied in part on the opinions of state agency consultants, which found C.O. had marked limitations in attending and completing tasks, less than marked limitations in the domains of acquiring and using information, interacting and relating with others, and health and physical well-being, and no limitations in moving about and manipulating objects and caring for himself. (R.68). The ALJ found these opinions persuasive "to the extent they are consistent with the overall evidence" and adopted the consultants' conclusion that C.O.'s had marked limitations in attending and completing tasks and less than marked limitations in several other domains. (R.68). As to the opinions that C.O.'s impairments cause "no limitations in . . . caring for self," however, the ALJ observed "the evidence shows that the claimant's impairments cause less than marked limitations caring for self as he has demonstrated issues with his behavior and anger issues." (R.68). The ALJ then noted Claimant's testimony that

C.O.'s "medication helps calms (*sic*) him down" and concluded "[f]or these reasons, greater limitations have been provided for in the domain of caring for self." (R.68-69).

The ALJ identified the following evidence in support of his determination: (1) Claimant's testimony that when C.O. gets angry, he reacts by breaking or throwing things, stomping, yelling, slamming doors and throwing tantrums; (2) "school records" indicating C.O. "has had issues with his behavior;" (3) a teacher questionnaire from January 2019 that "only identified obvious problems in this domain;" and (4) Claimant's testimony that C.O.'s new medications have reduced his ADHD symptoms and he "appears to be able to control his behavior better with his medications," although noting Claimant's testimony that while C.O.'s "medication calms him down . . . he then acts more withdrawn." (R.68). *See also* [ECF No. 24] at 6 (the Commissioner similarly identified this same evidence as what the ALJ relied on to find less than marked limitations in domain of caring for himself).

As addressed further below, the Court agrees with Claimant that the ALJ did not draw a logical bridge between the evidence he considered regarding C.O.'s ability to appropriately regulate his emotions and behavior, and the ALJ's conclusion that C.O.'s impairments cause less than marked limitations in the domain of caring for himself. (R.68).

## 1. The ALJ Selectively Considered School Records Relevant to the Domain of Caring for Yourself.

The ALJ acknowledged "school records indicate that the claimant has had issues with his behavior." (R.68). To that end, the ALJ's summary of C.O.'s school records included multiple descriptions of C.O.'s inappropriate behavior when angry

or stressed that appear to mirror Claimant's testimony. (*See* R.65-68 (November 29, 2018 "notice of assignment" by C.O.'s teacher "to behavioral health services" that the ALJ described as "noting that the claimant could benefit from anger coping, behavioral support, individual counseling, and group intervention for stress and coping"; December 13, 2018 school social work evaluation that the ALJ said reported C.O. "was very angry and would get upset and ball up his fists and growl, but now gets emotional and cries"; March 2019 school IEP report that the ALJ said stated C.O. "struggles with managing his emotions and behaviors and controlling his anger" and "lacked the social skills need to get along with" a student in the class; and April 2020 school IEP report that the ALJ said reported C.O. had physically fought with other students, "often needs breaks during whole group instruction when he gets easily frustrated" and "he argues with his one on one aide and other teachers when he is redirected during class").

Despite these descriptions in various school records from late 2018 through April 2020, the ALJ appears to have discounted these records based on a single response to a questionnaire in January 2019 where C.O.'s teacher "only identified obvious problems in this domain." (R.68). The teacher's response stated C.O. experienced "obvious problems" on a "weekly" basis in areas relevant to this domain including "handling frustration appropriately;" "being patient when necessary;" "identifying and appropriately asserting emotional needs;" "responding appropriately to changes in own mood (e.g. calming self);" and "using appropriate coping skills to meet daily demands of school environment." (R.181). The ALJ did not articulate why

11

this response was inconsistent with the other school records, nor did he explain why he "interpreted 'obvious problems' to be inconsistent with 'serious problems,' especially considering some courts interpret such ratings, along with other evidence, to support a marked limitation." *See Joclyn D. on behalf of J.D.P. v. Kijakazi*, 2022 WL 742438, at *5 (N.D. Ill. Mar. 11, 2022) (collecting cases finding teacher reports of "obvious problems" to support marked limitations); *see also Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 700 (7th Cir. 2009) (remand appropriate where "the ALJ failed to explain why he did not credit portions of the record that were favorable to LG, including the teachers' reports that found LG had serious *or obvious problems* in this domain") (emphasis added). In addition, the ALJ did not acknowledge other potentially relevant findings from the teacher's response (identified with respect to another domain of "interacting and relating to others") or whether those responses might support C.O.'s limitations in this domain, including that the teacher noted he had "obvious problems" on a "weekly" basis in "expressing anger appropriately" and "asking permission appropriately," and that C.O. "gets frustrated very easily. When this happens he gets angry and upset." (R.179).

The Commissioner argues that because a marked limitation is "'a serious deficit that is 'more than moderate,'" the teacher response indicating "obvious" problems instead of "serious" or "very serious" problems in this domain "supports the ALJ's conclusion that [C.O.'s] deficits were less than marked." [ECF No. 24] at 8. Not only does this argument make unsupported assumptions about how the teacher understood the questionnaire's terminology (in other words, that the teacher

responded in a manner that is consistent with the regulation's definition of a marked limitation), the ALJ also did not advance this reasoning in support of his analysis of the questionnaire response. While there may be some logic to the Commissioner's reasoning, it was never offered by the ALJ and the Court cannot speculate about what the ALJ may have been thinking. Under the *Chenery* doctrine this Court must confine its review to the grounds on which the ALJ made his finding. *See Spiva v. Astrue*, 628 F.3d 346, 352-53 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("the agency's attorneys may not advance an explanation the agency never made itself ...").

Moreover, the Court agrees with Claimant that the ALJ otherwise improperly cherry-picked evidence supporting his conclusion and failed to explain how he resolved evidence that may have been favorable to a finding that C.O. had marked limitations in this domain. Claimant's Motion [ECF No. 19] at 12-15. *See Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) ("We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies.").

For instance, at the outset of the ALJ's summary, he acknowledged "records from prior to the claimant's application date indicate that he was having outbursts, was acting out, and was angry and irritable" but discounted the pre-application evidence because "psychotherapy records from December 13, 2018 indicate that he was doing well and had had no major behavioral outbursts." (R.65 (citing Ex. 1F)). The ALJ did not explain how he weighed this single December 2018 report from a

psychotherapist that referenced C.O.'s behavior at school against the school records stating C.O. was experiencing ongoing behavioral issues in 2019 and 2020. Of particular note, the ALJ's opinion references a contemporaneous school social work evaluation with the same date as the psychotherapy report (December 13, 2018) in which C.O.'s teacher reported "at the beginning of the school year he was very angry and would get upset and ball up his fists and growl, but now gets emotional and cries." (R.65-66). The ALJ did not attempt to reconcile any conflicts between these two December 2018 reports regarding C.O.'s ability to effectively regulate his emotions while at school. Nor did the ALJ explain why the December 2018 report was relevant to the ALJ's evaluation of C.O.'s ongoing behavior at school during the subsequent year and a half. (R.65, R.68).

The ALJ also did not appear to take into account other potentially relevant aspects of the school records the ALJ addressed in his opinion. For example, the ALJ referenced the November 29, 2018 "Notice of Assignment to Behavioral Health Services" from C.O.'s school[3], but overlooked more detailed descriptions of C.O.'s behavior in that referral that could be relevant to the frequency and severity of C.O.'s behavioral problems, including that C.O. "very often" "loses temper" and "actively defies or refuses to comply with adult's requests and rules," "often" becomes "angry," and that his classroom behavior was "problematic" as to "following directions" and "disrupting class." (Compare R.67 to R.456-458). *See also* Claimant's Motion [ECF

---

[3] The Court notes this referral form is contemporaneous with the December 2018 psychotherapy report stating C.O.'s behavioral outbursts had decreased, although the ALJ also did not attempt reconcile these reports.

No. 19] at 5-6. Although the Commissioner asserts the form "says nothing about the severity of [C.O.'s] issues" and therefore does not contradict the ALJ's conclusion of a less than marked limitation in this domain, the Commissioner does not address the substance of this information from the referral form. Response [ECF No. 24] at 8. Regardless, the ALJ did not make this point or otherwise discount the school referral form in his opinion. Accordingly, the Court does not rely on the Commissioner's characterization of the school referral form.

Similarly, in discussing C.O.'s IEP report from March 2019, the ALJ acknowledged it reflected C.O. "struggles with managing his emotions and behaviors and controlling his anger," (R.66), but omitted any reference to the "Functional Behavior Assessment" in that report. (R.214-217). This Assessment contained descriptions of C.O.'s behavior, including that C.O. had "daily" incidents of "moderate" intensity in which he "displays impulsive behavior by hitting and punching, and kicking when others are in his personal space." (R.214). *See also* [ECF No. 19] at 5. These behaviors were reported to take place throughout a variety of classroom settings at school. (R.214). The triggers were "when other peers are in his personal space or what he considers to be his personal space and when he feels a lack of control of situation or environment. Any kind of change in routine, schedule, and environment without warning will trigger these behaviors as well." (*Id.*) The ALJ failed to address these behavior descriptions notwithstanding that they appear to closely align with the description of limitations in the domain of caring for himself. *See* 20 C.F.R. § 416.926a(k). *See also* Claimant's Motion [ECF No. 19] at 13. The ALJ

15

also did not reference a similar Functional Behavior Assessment from C.O.'s April 2020 IEP report. (R.66) (R.359). *See also* Claimant's Motion [ECF No. 19] at 8 (noting April 2020 IEP reported C.O. "struggles with communicating his needs" and continued to hit, punch, and kick others when they were in his personal space).

The ALJ also downplayed the frequency of C.O.'s behavioral incidents described in school records. For instance, the ALJ misquoted the April 2020 IEP report, stating it said C.O. "had *a few* incidents with physically fighting with a few other students," (R.66 (emphasis added)), but the report stated C.O. "has had *quite a few* incidents with physically fighting with a few other students." (R.333 (emphasis added)). The ALJ also acknowledged the April 2020 IEP report stated C.O. "argues with his one on one aide and other teachers when he is redirected in class" (R.66) but omitted that such arguments "often" occur. (*Id.*) The ALJ did not address descriptions in the report that "[o]ften times, [C.O.'s] moods go from one extreme to the other (happy to angry, sad to angry, etc.) and he has a lot of difficulty using coping skills to calm himself down." (R.333). Nor did the ALJ address the report's reference to a decline in C.O.'s academic performance that may have resulted from C.O. having "to spend a lot of time regulating himself and his moods, as well as taking breaks with his [aide] when he disrupting (*sic*) the class." (R.333-334). *See also* (R.334 (C.O. "struggles with communicating his needs and asking for assistance" and "is easily emotionally triggered by many different things with his peers" and as a result his one-on-one aide "often needs to take him for breaks during class to either calm down emotionally or redirect himself"). The ALJ also does not explain whether his

determination that C.O. had less than marked limitations in this domain was based on the frequency of C.O.'s behavioral incidents.

In short, the ALJ "failed to explain how unfavorable evidence overshadowed the favorable evidence in the IEPs" and other school records. *See Gantner ex rel. J.J. v. Berryhill*, 2017 WL 5891038, at *6 (N.D. Ill. Nov. 27, 2017). "Although an ALJ need not specifically address every piece of evidence, the ALJ must build a 'logical bridge' between the evidence and his conclusion." *Greer v. Kijakazi*, 2023 WL 4540472, at *3 (7th Cir. July 14, 2023) (internal citations omitted). Moreover, "the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003); *see also Joclyn D. on behalf of J.D.P.*, 2022 WL 742438, at *5; *Michelle J. o/b/o ZAJ v. Comm'r of Soc. Sec.*, 2022 WL 3153967, at *6 (S.D. Ill. Aug. 8, 2022) (remanding where "ALJ failed to build the required 'logical bridge' from the evidence to his conclusions" because "[t]he ALJ failed to address the evidence in the record when determining what limitations [claimant] has in caring for herself and completing tasks" and "it appears the ALJ cherrypicked the evidence"). Remand is necessary because the ALJ did not logically connect the school records to his conclusion that C.O. had less than marked limitations in caring for himself.

### 2. The ALJ Failed to Identify Inconsistencies between Record Evidence and Claimant's Testimony Describing C.O.'s Behavior.

The ALJ acknowledged Claimant's testimony describing C.O.'s inappropriate and aggressive behavior when he is angry but the ALJ did not explain how he weighed that testimony. (R.68). Elsewhere in the opinion, however, the ALJ noted the "extent

of the limitations described by the claimant's mother, in terms of functioning, exceed those supported by the objective evidence in the file. . .," suggesting the ALJ may have discounted Claimant's credibility. (R.67). Although an ALJ's credibility determination is entitled to deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue,* 582 F.3d 672, 676 (7th Cir. 2009).

The ALJ did identify apparent inconsistencies between evidence related to C.O.'s ability to independently complete activities such as dressing and bathing and Claimant's testimony about her son's abilities. (R.65, R.67). But the ALJ did not explain his finding that C.O. had less than marked limitations in the domain of caring for himself as based on evidence about C.O.'s ability to dress and bath himself. (R.68-69). Rather, the ALJ's analysis focused on C.O.'s ability to appropriately regulate his emotions. (*Id.*) The only evidence potentially contrary to Claimant's description of C.O.'s behavior when he was angry identified by the ALJ was the teacher's questionnaire response (discussed above) and C.O.'s recent improvement in behavior after starting new medication (as to which Claimant also testified). (*Id.*) Therefore, to the extent the ALJ chose to discount Claimant's description of C.O.'s behavioral responses to anger and frustration, the ALJ failed to support any such negative credibility determination with substantial evidence.[4]

---

[4] The Court also notes that the Commissioner does not argue the evidence about C.O.'s ability to bathe or dress himself supports the ALJ's less than marked limitation determination in

As a result, the Court is left without a clear understanding of why the ALJ found Claimant's testimony (or for that matter, the school records addressed above) "supported a 'less than marked' limitation in self-care, rather than a more severe limitation." *See Biggs on behalf of DKGB v. Kijakazi*, 2022 WL 4285827, at *2–5 (N.D. Ind. Sept. 15, 2022) (citing *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007)); *Seth W. o/b/o N.D. v. Kijakazi*, 2023 WL 2646737, at *4 (N.D. Ill. Mar. 27, 2023) (Gilbert, J.) (remanding where "[i]t is unclear to the Court what evidence the ALJ relied upon to conclude that [claimant] has 'no more than a less than marked limitation' in his ability to care for himself"). For that reason, remand is necessary for the ALJ to address how he weighed Claimant's testimony and other evidence describing C.O.'s behavioral problems in responding to his emotions, and, based on that analysis, what level of limitations are warranted for this domain.

### 3. The ALJ Failed to Draw a Logical Bridge Between the Medical Evidence and the Conclusion of Less than Marked Limitations in the Domain of Caring for Yourself.

The Commissioner says the ALJ "was entitled to rely on the uncontradicted opinions of the consulting and reviewing doctors" and contends "[t]he ALJ credited the opinions of these physicians and psychologists in concluding [C.O.] did not have any marked or extreme limitations, except for a marked limitation in the domain of attending and completing tasks." [ECF No. 24] at 4-6. But the ALJ did not rely on the

---

the domain of caring for himself. [ECF No. 24] at 4-8. In any event, given the evidence as to C.O.'s limitations in appropriately regulating his emotions, a finding that C.O. was able to dress or bath himself would not, standing alone, support a determination that C.O. has less than marked limitations in this domain. *See* 20 C.F.R. § 416.926a (a marked limitation in a domain can include circumstances where an impairment "limits only one activity").

consultants' opinions to conclude C.O. had *less than marked* limitations in caring for himself. Rather, the ALJ found the consultants' opinions persuasive "to the extent that they are consistent with the overall evidence" and, based on the overall evidence, rejected their conclusion that C.O. had no limitations in this domain. (R.68). The ALJ found "the evidence shows that the claimant's impairments cause less than marked limitations caring for self (*sic*) as he has demonstrated issues with his behavior and anger issues." (R.68). Given that the ALJ rejected the consultants' determination of no limitations and stated he relied on other evidence in making his finding as to this domain, the Court does not agree with Commissioner that the consultants' opinions support the ALJ's less than marked limitations determination.

Moreover, the ALJ did not reconcile the less than marked limitations determination with evidence from C.O.'s other psychological examinations. In finding C.O. had marked limitations in a different domain (attending and completing tasks), the ALJ stated "multiple consultative examinations consistently noted that he had problems with attention, concentration, and overactive behavior." (R.67). This appears to reference reports from two psychologists who performed consultative examinations. (*See* R.65 (referencing February 19, 2019 report from Dr. John Hardie finding C.O. "had problems with attention, concentration, and overactive behavior," was "hyperactive and impulsive during his evaluation," "interrupted frequently and had to be redirected several times during the evaluation," and concluding "with a diagnoses of ADHD as well as oppositional defiance disorder. . ."; March 25, 2019 report from Dr. Michael E. Stone finding C.O. "exhibited problems with attention,

20

concentration, and overactive behavior and impulsivity consistent with ADHD"; and December 2, 2019 report from Dr. Stone describing C.O.'s "behavior as inappropriate;" that "his ability to relate during the examination was inadequate;" and diagnosing C.O. with ADHD and "behavior problems"). *See* Claimant's Motion [ECF No. 19] at 6-8. Although the ALJ found these psychological reports supported marked limitations in the domain of attending and completing tasks, the ALJ did not address whether the reports, including the references to behavioral problems, were relevant to the domain of caring for himself.[5]

The Commissioner argues these reports do not contradict the ALJ's evaluation because the "examining psychologist" (citing only the December 2019 report from Dr. Stone) did not provide "any assessment of [C.O.'s] limitation in the 'caring for yourself' domain." [ECF No. 24] at 8. (The Commissioner does not address Dr. Hardie's report.) Given the references to C.O.'s behavior in these reports, the Court disagrees with the Commissioner about the potential relevance of this evidence. In any event, the ALJ did not address whether these reports were relevant to this domain. (R.65, R.67). *See also* Claimant's Motion [ECF No. 19] at 7, 14. The ALJ referenced Dr. Hardie and Dr. Stone's reports only in connection with analyzing the domain of attending and completing tasks. (R. 67). In short, it is unclear if the ALJ considered this evidence in reaching his conclusion that C.O. had less than marked

---

[5] The ALJ omitted reference to parts of Dr. Hardie's report that appeared potentially related to this domain, including that C.O.'s "behavior is disruptive and compulsive" and his "behavior at school and home is consistent." (R.626.)

limitations in caring for himself. (R.65, R.68). *See* Claimant's Reply Brief [ECF No. 25] at 3-4.

Finally, the Commissioner argues the ALJ did not commit legal error by accommodating C.O. in finding him more limited in caring for himself than any opinion offered by a state consultant, noting Claimant "fails to identify any contrary medical opinions suggesting that [C.O.] had greater restriction in any domain than those the ALJ assessed." Response [ECF No. 24] at 4-5. But Claimant's burden as to the scope of C.O.'s limitations in the functional domains "was to produce medical evidence, not an opinion." *See Greer v. Kijakazi*, No. 22-2548, 2023 WL 4540472, at *4 (7th Cir. July 14, 2023) (rejecting Acting Commissioner's argument "that substantial evidence supported the ALJ's decision because the claimant had offered 'no opinion from any doctor to set ... limits ... greater than those the ALJ set'"). Accordingly, the relevant issue is not the absence of an opinion imposing greater limitations in this domain but rather whether the medical and other evidence as to C.O.'s behavior and ability to regulate his emotions supported further limitations.

As discussed above, the ALJ did not address whether the psychological reports from Dr. Stone and Dr. Hardie supported more limitations in this domain or reconcile their findings following examinations of C.O. with the opinions of non-examining consultants. *See Greer*, 2023 WL 4540472, at *3 ("At a minimum, the ALJ should have explained why he discounted the newer findings by Greer's treating physician in favor of the earlier opinion by the non-examining consultant"). The ALJ also downplayed other medical reports. For example, the ALJ described a September 19, 2019 "mental

status examination" in generally positive terms ("within normal limits") (R.65), but omitted that this psychiatrist examination was based on a referral from C.O.'s school, that C.O. was unable to sit calmly during the exam and "constantly interrupts," and that following this exam C.O. was prescribed medication for the first time to manage his symptoms. (R.641-43).[6] Remand is necessary to allow the ALJ to explain what level of limitations may be warranted in light of this medical evidence.

### 4. The ALJ Failed to Address a Potential Closed Disability Period Before C.O.'s Change in Medication.

Finally, Claimant argues the ALJ erred in failing to consider a closed period of disability for the period of time (exceeding 12 months) after Claimant's application was filed in November 2018 and before he started taking new medications in or around May 2020. [ECF No. 19] at 15. The Court agrees with Claimant.

It is clear the ALJ relied heavily on C.O.'s improved ability to control his behavior after he began taking new medications in May 2020, a few months before the hearing, as supporting his conclusion that C.O. had less than marked limitations in this domain. (R.68-69). As an initial matter, the ALJ did not apply the correct standard in analyzing C.O.'s improvement on the new medication. "[T]he question is not whether [C.O.] was improving, but how [he] was functioning relative to other children [his] age." *Biggs on behalf of DKGB*, 2022 WL 4285827, at *2–5 (collecting cases). "The functional equivalence rules require us to begin by considering how the

---

[6] The ALJ also did not reference an August 2019 report from C.O.'s therapist that noted his mother reported threats of self-harm and said C.O. had been "discharged from camp due to continued issues with his behavior." (R.576-579). *See also* Claimant's Motion [ECF No. 19] at 7; Claimant's Reply Brief [ECF No. 25] at 3-4.

child functions every day and in all settings compared to other children the same age who do not have impairments." SSR 09-1P (S.S.A. Feb. 17, 2009). The ALJ did not address whether the new medication resulted in C.O. being able to reach the level of function that a non-impaired child of his age should have in this domain.

In addition, "[a] child is disabled within the meaning of the Social Security Act if he has a 'physical or mental impairment, which results in marked and severe functional limitations, and ... which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Valerie A. ex rel. L.G. v. Kijakazi*, 2023 WL 8701074, at *2 (N.D. Ill. Dec. 15, 2023) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)). At the hearing, Claimant's counsel suggested that the ALJ consider a closed period of disability if the ALJ concluded that C.O.'s recent medication change had significantly changed Claimant's condition. (R.32). [ECF No. 19] at 15. Although the ALJ relied on C.O.'s improved symptoms on the new medication in finding less than marked limitations, the ALJ did not compare C.O.'s improved behavior to his behavior during the closed period and the ALJ did not address the level of C.O.'s limitations during that earlier period.

"The court cannot review a determination as to a closed period of disability where the ALJ does not consider it." *Jackson v. Astrue*, 2010 WL 4793309, at *14–15 (N.D. Ill. Nov. 18, 2010). "Courts routinely remand in this context when the ALJ fails to discuss whether a closed period was considered." *See Lenora W. v. Kijakazi*, 2022 WL 4386242, at *4 (N.D. Ill. Sept. 22, 2022) (collecting cases) (". . . the Court is unable to determine whether the ALJ considered and rejected a closed period or failed to

consider a closed period altogether. The ALJ's decision thus does not provide a logical bridge between the evidence and his conclusion."); *Arnett v. Saul*, 2021 WL 2394338, at *5 (N.D. Ind. June 11, 2021) ("the ALJ erred by failing to consider whether [claimant] at least satisfied a closed period of disability from her alleged onset date through the date she recovered from" surgery). Given the ALJ's substantial reliance on C.O.'s improved behavior after he began taking new medications, the ALJ should have addressed whether C.O.'s behavior during the prior closed period indicated more substantial limitations in that domain.

The Commissioner says the ALJ did not need to address a closed period because the ALJ considered evidence throughout that time period and concluded C.O. was not disabled at any point. [ECF No. 24] at 8-9. While the ALJ may have considered evidence throughout the potential closed period in assessing C.O.'s functionality in the various domains, when specifically addressing the domain of caring for himself, the ALJ relied substantially on C.O.'s improved behavior after May 2020 in reaching the conclusion of less than marked limitations after the medications had begun. The ALJ should have, at minimum, addressed how he assessed C.O.'s behavior before the new medications. *See Brown v. Massanari*, 167 F. Supp. 2d 1015, 1020 (N.D. Ill. 2001) ("Despite the fact that the ALJ did find that Plaintiff had not been under a disability from June 2, 1994 through the date of his decision, the Court finds that Plaintiff is correct that the ALJ failed to separately evaluate whether Plaintiff was disabled during the closed period of June 2, 1994 through October 1995."); *Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075–76 (N.D. Ill.

2013) ("Yet it is painfully apparent . . . that the ALJ focused entirely on the asserted absence of a disability as of the date of the Hearing, based in substantial part on extremely recent evidence . . . to support the conclusion that [claimant] was not disabled as of that date."). Moreover, as discussed above, the Court concludes the ALJ's finding that C.O. had less than marked limitations in this domain was not supported by substantial evidence and also remands on that basis. On remand, the ALJ should also address whether C.O. was disabled for the closed period.

## CONCLUSION

Accordingly, for all of the reasons set forth in the Court's Memorandum Opinion and Order, Claimant's Motion seeking remand [ECF No. 19] is granted, and the Commissioner's Response seeking summary judgment [ECF No. 24] is denied.

It is so ordered.


Jeffrey T. Gilbert
United States Magistrate Judge


Dated:   March 11, 2024